JOHN P. KRISTENSEN (SBN 224132)
DAVID L. WEISBERG (SBN 211675)
CHRISTINA M. LE (SBN 237697)
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone:  310-507-7924
Fax:  310-507-7906
*john@kristensenlaw.com*
*david@kristensenlaw.com*
*christina@kristensenlaw.com*

JARRETT L. ELLZEY (*Pro Hac Vice to Follow*)
**HUGHES ELLZEY, LLP**
2700 Post Oak Boulevard, Suite 1120
Houston, Texas 77056
Telephone: (713) 554-2377
Fax: (888) 995-3335
*jarrett@hughesellzey.com*

*Attorneys for Plaintiff and all others
similarly situated*

### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| VALENTINA HIGGINS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>ENAGIC USA, INC., a California corporation; and DOES 1 through 10, inclusive, and each of them,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>(1) Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq.; and<br>(2) Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., - 47 CFR § 64.1200(d)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff VALENTINA HIGGINS ("Plaintiff" or "Higgins"), individually and on behalf of all other persons similarly situated, alleges the following upon information and belief based upon personal knowledge:

### NATURE OF THE CASE

1.      Plaintiff brings this action for herself and others similarly situated seeking damages and any other available legal or equitable remedies resulting from the illegal actions of defendants ENAGIC USA, INC. ("Defendant" or "Enagic") and DOES 1 through 50 (collectively referred to throughout portions of this Class Action Complaint as "Defendants"), in contacting Plaintiff as well as knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"), thereby invading Plaintiff's privacy.

2.      Defendant is a manufacturer and retailer of water-ionization systems. In an effort to solicit potential customers, Enagic recruited, or employed call centers, to place telephone calls, *en masse*, to consumers across the country. On information and belief, Defendant and or its agents purchase "leads" containing consumers' contact information and create electronic databases from which Defendant makes automated calls.

3.      Defendants conducted wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.      The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendants' unlawful conduct, Plaintiff files the instant lawsuit and seek an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers registered on the National Do Not Call Registry and an award of statutory damages to the members of the Class under the TCPA up to $500.00 per

1   violation, together with court costs, reasonable attorneys' fees, and up to three

2   times actual monetary loss damages (for knowing and/or willful violations).

3       5.      By making the telephone calls at issue in this Complaint, Defendants

4   caused Plaintiff and the members of a putative Class of consumers (defined

5   below) actual harm, including the aggravation, nuisance, and invasion of privacy

6   that necessarily accompanies the receipt of unsolicited and harassing telephone

7   calls, as well as the monies paid to their carriers for the receipt of such telephone

8   calls.

9       6.      Plaintiff brings this class action against Defendants to secure redress

10  because Defendants willfully violated the TELEPHONE CONSUMER PROTECTION

11  ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to

12  Plaintiff and other class members' telephones through the use of an auto-dialer

13  and/or artificial or pre-recorded voice message.

14      7.      The TCPA was enacted to protect consumers from unsolicited

15  telephone calls and text messages exactly like those alleged in this case. In

16  response to Enagic's unlawful conduct, Plaintiff files the instant lawsuit and seeks

17  an injunction requiring Enagic to cease all unsolicited telephone calling activities

18  to consumers registered on the National Do Not Call Registry, and cease all

19  telemarketing activity until it actually comply with its obligations under 47 C.F.R.

20  § 64.1200(d) and an award of statutory damages to the members of the Class

21  under the TCPA up to $500.00 per violation, together with court costs, reasonable

22  attorneys' fees, and treble damages (for knowing and/or willful violations).

## **PARTIES**

24      8.      Plaintiff VALENTINA HIGGINS is a natural person and citizen of

25  Montebello, California.

26      9.      Defendant ENAGIC USA, INC. is a corporation organized under the

27  laws of the State of California. Defendant maintains its principal place of business

28  in Torrance, CA. Defendant may be served with process by serving its registered

1 | agent, Toshio Maehara, 24 Mela Lane, Rancho Palos Verdes, CA 90503.

2 |      10.    Plaintiff does not yet know the identity of Defendant's employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the statute and were not merely tangentially involved. They will be named, as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("*American Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiff will move to amend to name the individuals as defendants. Enagic and the yet to be identified DOES are collectively referred to herein as "Defendants")

     11.    Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

13.     The Court has personal jurisdiction over Defendant because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

15.     Defendants are subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

16.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

17.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems— principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

18.     In its initial implementation of the TCPA rules, the FCC included an

KRISTENSEN WEISBERG LLP
Attorneys for Plaintiffs

exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

19.    As of October 16, 2013, unless the recipient has given prior express written consent,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a

---

[1]    Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

20.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

21.    Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

22.    There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

**A.    D<span>O</span> N<span>OT</span> C<span>ALL</span> V<span>IOLATIONS OF THE</span> TCPA**

23.    <u>More Than One Call within Any 12 Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

1      24.   <u>Calls to Residential Lines on the Do Not Call List</u>. The TCPA's

2  implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or

3  entity shall initiate any telephone solicitation" to "[a] residential telephone

4  subscriber who has registered his or her telephone number on the national do-not-

5  call registry of persons who do not wish to receive telephone solicitations that is

6  maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

7      25.   <u>Or, Wireless Lines on the Do Not Call List</u>. Owners of wireless

8  telephone numbers (aka mobile or cellular phones) receive the same protections

9  from the Do Not Call provision as owners or subscribers of wireline ("landline")

10  phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c)

11  and (d) "are applicable to any person or entity making telephone solicitations or

12  telemarketing calls to wireless telephone numbers to the extent described in the

13  Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules

14  and Regulations Implementing the Telephone Consumer Protection Act of

15  1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone
> solicitations to residential telephone subscribers must comply with
> time of day restrictions and must institute procedures for maintaining
> do-not-call lists. For the reasons described above, we conclude that
> these rules apply to calls made to wireless telephone numbers. We
> believe that wireless subscribers should be afforded the same
> protections as wireline subscribers.

21      26.   <u>The Affirmative Defense of Prior Express Consent</u>. The Ninth Circuit

22  has defined "express consent" to mean "clearly and unmistakably stated."

23  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009)

24  ("*Satterfield*")). "Prior express consent is an affirmative defense for which the

25  defendant bears the burden of proof." See *Grant v. Capital Management Services,*

26  *L.P.*, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not

27  an element of a TCPA plaintiff's prima facie case, but rather is an affirmative

28  defense for which the defendant bears the burden of proof"); see also *Robbins v.*

*Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013).

27.     <u>Telemarketers Must Maintain a List of Persons Requesting Not to Receive Calls</u>. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any

other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made) and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

## **COMMON FACTUAL ALLEGATIONS**

28.     Defendant Enagic USA, Inc. is a manufacturer and retailer of water-ionization systems. During or before spring 2015, in an effort to solicit potential and former customers, Enagic USA, Inc. recruited, or employed call centers, to place telephone calls, *en masse*, to consumers across the country. On information and belief, Defendant and or their agents purchase "leads" containing consumers' contact information and create electronic databases from which Defendant makes automated calls.

29.     In Defendant's overzealous attempt to market its services, they placed phone calls to consumers who never provided consent to call, and to consumers having no relationship with Defendant. Worse yet, Defendant placed repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

30.     Defendants knowingly made these telemarketing calls without the prior express written consent of the call recipients, and knowingly continue to call

1   them after requests to stop. As such, Defendants not only invaded the personal

2   privacy of Plaintiff and members of the putative Class, but also intentionally and

3   repeatedly violated the TCPA.

4        31.    Furthermore, Defendants failed to comply with 47 C.F.R. §

5   64.1200(d), and as explained below, continued to contact Plaintiff and other class

6   members after they informed Defendants to stop contacting them.

7                  **FACTS SPECIFIC TO PLAINTIFF HIGGINS**

8        32.    On or about April 21, 2012, Plaintiff registered her cellular phone

9   number with the area code (562) and ending in -5670 with the National Do Not

10  Call Registry.

11       33.    Plaintiff Higgins is the regular carrier and exclusive user of the

12  telephone assigned the number ending in -5670. The number is assigned to a

13  cellular telephone service for which Plaintiff Higgins is charged for incoming

14  calls pursuant to 47 U.S.C. § 227(b)(1).

15       34.    In the spring 2015, Plaintiff Higgins began receiving calls and text

16  messages on her cellular telephone from the number (720) 842-7080, claiming to

17  be Defendant Enagic USA, Inc.

18       35.    Plaintiff Higgins never had a business relationship with Defendant.

19       36.    Plaintiff Higgins never provided Defendant with prior consent to

20  contact her on her phone via a text message or telephone call.

21       37.    Nonetheless, Defendant called Plaintiff Higgins over 40 times on her

22  phone during a twelve-month period; often three to four times daily and before

23  8:00 a.m. and after 10:00 p.m.

24       38.    Each time Plaintiff Higgins would answer the call Defendant would

25  state they are Enagic and begin a sales pitch involving water filtration.

26       39.    Defendant Higgins specifically and bluntly told Defendant to stop

27  calling stating, "Remove my name; stop calling." Yet, the calls continued.

28       40.    Defendant's calls constituted calls that were not for emergency

purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

41.    Defendant's unsolicited telemarketing calls caused Plaintiff Higgins extreme aggravation and occupied her telephone line.

42.    Plaintiff Higgins has reason to believe Defendant called thousands of telephone customers listed on the Do Not Call Registry to market their products and services.

43.    Plaintiff's overriding interest is ensuring Defendant cease all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

44.    In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of herself and a class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls voice and text to individuals whose numbers are registered on the Do Not Call Registry.

45.    On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all illegal telemarketing and spam activities and an award of statutory damages to the class numbers, together with costs and reasonable attorneys' fees.

## STANDING

46.    Plaintiff has standing to bring this suit on behalf of themselves and the members of the class under Article III of the United States Constitution because Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

**A.    INJURY IN FACT**

47.    Plaintiff has standing to bring this suit on behalf of herself and the members of the class under Article III of the United States Constitution because

1  Plaintiff's claims state: (a) a valid injury in fact; (b) an injury which is traceable to

2  the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial

3  decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Robins v. Spokeo,* 867

4  F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018);

5  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate*

6  *Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

7      48.    Plaintiff's injuries must be both "concrete" and "particularized" in

8  order to satisfy the requirements of Article III of the Constitution. *(Id.)*

9      49.    For an injury to be concrete it must be a de facto injury, meaning it

10  actually exists.  In the present case, Plaintiff took the affirmative step of enrolling

11  themselves on the National Do-Not-Call Registry for the purpose of preventing

12  marketing calls to their telephones. Such telemarketing calls are a nuisance, an

13  invasion of privacy, and an expense to Plaintiff. *See Soppet v. enhanced Recovery*

14  *Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). All three of these injuries are present

15  in this case. (See also *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).)

16      50.    Furthermore, the Third Circuit recently stated, Congress found that

17  "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade

18  the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at

19  1043, and sought to protect the same interests implicated in the traditional

20  common law cause of action. Put differently, Congress was not inventing a new

21  theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while

22  "previously inadequate in law," was of the same character of previously existing

23  "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and

24  approved, such a choice by Congress. *Susinno v. Work Out World Inc.,* No. 16-

25  3277, 2017 WL 2925432, at *4 (3d Cir. July 10, 2017).

26      51.    For an injury to be particularized means that the injury must affect

27  the plaintiff in a personal and individual way. *See Spokeo* at 7.  Furthermore,

28  Plaintiff is the person who pays for the phone, and are the regular carrier and user

1    of the phone.  All of these injuries are particular to Plaintiff.

2    **B.    T<small>RACEABLE TO THE</small> C<small>ONDUCT OF</small> D<small>EFENDANT</small>**

3         52.    Plaintiffs must allege at the pleading stage of the case facts to show

4    that their injury is traceable to the conduct of Defendant. In this case, Plaintiff

5    satisfies this requirement by alleging that Defendant, and/or agents of Defendant

6    on behalf of Defendant, placed illegal calls to Plaintiff's phone.

7         53.    In the instant case, Defendant placed calls to Plaintiff's

8    wireless/cellular phone on multiple occasions.

9    **C.    I<small>NJURY</small> L<small>IKELY TO BE</small> R<small>EDRESSED BY A</small> F<small>AVORABLE</small> J<small>UDICIAL</small> O<small>PINION</small>**

10        54.    The third prong to establish standing at the pleadings phase requires

11   Plaintiffs to allege facts to show that the injury is likely to be redressed by a

12   favorable judicial opinion.  In the present case, Plaintiff's Prayers for Relief

13   include a request for damages for each call made by Defendant, as authorized by

14   statute in 47 U.S.C. § 227. The statutory damages were set by Congress and

15   specifically redress the financial damages suffered by Plaintiff and the members

16   of the putative class.  Furthermore, Plaintiff's Prayers for Relief request injunctive

17   relief to restrain Defendant from the alleged abusive practices in the future. The

18   award of monetary damages and the order for injunctive relief redress the injuries

19   of the past, and prevent further injury in the future.

20        55.    Because all standing requirements of Article III of the U.S.

21   Constitution have been met, as laid out in *Spokeo, Inc. v. Robins,* 578 U.S. ___

22   (2016) and in the context of a TCPA claim, as explained by the Ninth Circuit in

23   *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016), Plaintiff has standing to

24   sue Defendant on the stated claims.

25              **CLASS ACTION ALLEGATIONS**

26   **A.    C<small>LASS</small> A<small>LLEGATIONS</small>**

27        56.    Plaintiff brings this action pursuant to Federal Rule of Civil

28   Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following class

defined as follows (the "Class"):

**"DNC Class"[2]:** All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendant within a 12-month period; and, (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

**"DNC SubClass":**  All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Enagic within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant, or those acting on Defendant's behalf, re-contacted 30 days after first requesting Defendant, or those acting on Defendant's behalf, halt placing such calls.

57.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendants' counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released; and (7) individuals for whom Defendants have record of consent to place telemarketing calls.

58.    This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Classes, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

59.    Plaintiff reserves the right to expand the Class and SubClass

---

[2]    The DNC Class and DNC SubClass are sometimes referred to as Class and SubClass respectively. They are also referred to as "Class" as well.

1   definitions to seek recovery on behalf of additional persons as warranted as facts

2   are learned in further investigation and discovery.

3       60.    Plaintiff and members of the Class and SubClass were harmed by

4   Defendant's acts in at least the following ways: Defendant, either directly or

5   through agents, illegally contacted Plaintiff and the Class and SubClass members

6   *via* their telephones, after Plaintiff and the Class and SubClass members took the

7   affirmative step of registering their numbers on the DNC, and/or contacted

8   Plaintiff and members of the Class and SubClass using a pre-recorded voice for

9   telemarketing purposes without first obtaining prior consent.

**B.    NUMEROSITY**

10

11      61.    The exact sizes of the Class and SubClass are unknown and not

12  available to Plaintiff at this time, but it is clear individual joinder is impracticable.

13      62.    On information and belief, Defendants made telephone calls to

14  thousands of consumers who fall into the definition of the Class and SubClass.

15  Members of the Class and SubClass can be easily identified through Defendants'

16  records.

17  **C.    COMMONALITY AND PREDOMINANCE**

18      63.    There are many questions of law and fact common to the claims of

19  Plaintiff and the Classes, and those questions predominate over any questions that

20  may affect individual members of the Class.

21      64.    Common questions for the Class and SubClass include, but are not

22  necessarily limited to the following:

23

24          (a)    Whether Defendants' conduct violated the TCPA;

25          (b)    Whether Defendants systematically made telephone calls to
26                 consumers who did not previously provide Defendant and/or
                   their agents with prior express written consent to receive such
27                 phone calls after June 27, 2013;

28          (c)    Whether Defendants systematically made telephone calls to

consumers whose telephone numbers were registered with the National Do Not Call Registry;

(d)    Whether members of the Class and SubClass are entitled to up to three times actual monetary loss based on the willfulness of Defendants' conduct;

(e)    Whether Defendants and their agents failed to comply with 47 C.F.R. § 1200(d); and

(f)    Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

## D.   TYPICALITY

65.    Plaintiff's claims are typical of the claims of the other members of the Class and SubClass.

66.    Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class and SubClass.

## E.   ADEQUATE REPRESENTATION

67.    Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

68.    Plaintiff has no interest antagonistic to those of the Defendants and their agents, and Defendants have no defenses unique to Plaintiff.

## F.   POLICIES GENERALLY APPLICABLE TO THE CLASS

69.    This class action is appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class and SubClass as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and SubClass members, and making final injunctive relief appropriate with respect to the Class and SubClass as a whole.

70.    Defendants' practices challenged herein apply to and affect the Class

1   and SubClass' members uniformly, and Plaintiff's challenge of those practices

2   hinges on Defendants' conduct with respect to the Class and SubClass as a whole,

3   not on facts or law applicable only to Plaintiff.

4   **G.    SUPERIORITY**

5       71.    This case is also appropriate for class certification because class

6   proceedings are superior to all other available methods for the fair and efficient

7   adjudication of this controversy given that joinder of all parties is impracticable.

8       72.    The damages suffered by the individual members of the Class and

9   SubClass will likely be relatively small, especially given the burden and expense

10  of individual prosecution of the complex litigation necessitated by Defendants'

11  actions.

12      73.    Thus, it would be virtually impossible for the individual members of

13  the Class and SubClass to obtain effective relief from Defendants' misconduct.

14      74.    Even if members of the Class and SubClass could sustain such

15  individual litigation, it would still not be preferable to a class action, because

16  individual litigation would increase the delay and expense to all parties due to the

17  complex legal and factual controversies presented in this Complaint.

18      75.    By contrast, a class action presents far fewer management difficulties

19  and provides the benefits of single adjudication, economy of scale, and

20  comprehensive supervision by a single court. Economies of time, effort and

21  expense will be fostered, and uniformity of decisions ensured.

22                  **FIRST CAUSE OF ACTION**

23              **VIOLATION OF TCPA, 47 U.S.C. § 227(C)**

24          **("DNC Claim" On behalf of Plaintiff and the DNC Class)**

25      76.    Plaintiff re-alleges and incorporates by reference each preceding

26  paragraph as though set forth at length herein.

27      77.    47 U.S.C. § 227(c) provides that any "person who has received more

28  than one telephone call within any 12-month period by or on behalf of the same

1  entity in violation of the regulations prescribed under this subsection may" bring a

2  private action based on a violation of said regulations, which were promulgated to

3  protect telephone subscribers' privacy rights to avoid receiving telephone

4  solicitations to which they object.

5      78.    The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—

6  provides that "[n]o person or entity shall initiate any telephone solicitation" to

7  "[a] residential telephone subscriber who has registered his or her telephone

8  number on the national do-not-call registry of persons who do not wish to receive

9  telephone solicitations that is maintained by the federal government." *See* 47

10  C.F.R. § 64.1200(c).

11     79.    47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and

12  (d) "are applicable to any person or entity making telephone solicitations or

13  telemarketing calls to wireless telephone numbers to the extent described in the

14  Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules

15  and Regulations Implementing the Telephone Consumer Protection Act of

16  1991,'" which the Report and Order, in turn, provides as follows:

17         The Commission's rules provide that companies making telephone
          solicitations to residential telephone subscribers must comply with
18         time of day restrictions and must institute procedures for maintaining
          do-not-call lists. For the reasons described above, we conclude that
19         these rules apply to calls made to wireless telephone numbers. We
          believe that wireless subscribers should be afforded the same
20         protections as wireline subscribers.

21

22     80.    Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing

23  to be initiated, telephone solicitations to wireless and residential telephone

24  subscribers such as Plaintiff and the DNC Class members who registered their

25  respective telephone numbers on the National Do Not Call Registry, a listing of

26  persons who do not wish to receive telephone solicitations that is maintained by

27  the federal government. These consumers requested to not receive calls from

28  Defendants, as set forth in 47 C.F.R. § 64.1200(d)(3).

81.    Defendants made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiff and members of the DNC Class never provided any form of consent to receive telephone calls from Defendant do not have a record of consent to place telemarketing calls to them.

82.    Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Class members received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

83.    To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), award up to three times the amount of statutory damages recoverable by the members of the Class.

## SECOND CAUSE OF ACTION

### VIOLATION OF TCPA, 47 U.S.C. § 227 – 47 C.F.R. § 64.1200(D)

### ("DNC Claim" On behalf of Plaintiff and the DNC SubClass)

84.    Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

85.    Defendants violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the DNC SubClass, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

86.    These consumers, already on the Do Not Call Registry, like Plaintiff, requested to not receive calls from Defendants, as set forth in 47 C.F.R. § 64.1200(d)(3).

87.     Nevertheless, Defendants and their agents refused to record the requests, including Plaintiff's, to stop their telemarketing calls. Any prior express consent was revoked (if it ever existed).

88.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the DNC Class members received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200(d), after they had requested to not be called again, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the DNC SubClass suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

89.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

### ATTORNEY'S FEES

90.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

91.     Plaintiff is entitled to recover reasonable attorney fees under Rule 23 of the Federal Rules of Civil Procedure, California law, and requests the attorneys' fees be awarded.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

(a)     An order certifying the DNC Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel, Hughes Ellzey, LLP and Kristensen Weisberg, LLP as lead Class Counsel;

(b)     An order certifying the DNC SubClass as defined above, appointing Plaintiff as the representative of the Class, and

1    appointing his counsel, Hughes Ellzey, LLP and Kristensen

2    Weisberg, LLP as lead Class Counsel;

3    (c)    An award of actual and statutory damages for each and every

4           violation to each member of the Class pursuant to 47 U.S.C. §

5           227(b)(3)(B);

6    (d)    An award of actual and statutory damages for each and every

7           knowing and/or willful violation to each member of the Class

8           pursuant to 47 U.S.C § 227(b)(3)(B);

9    (e)    An injunction requiring Defendant and Defendant's agents to

10          cease all unsolicited telephone calling activities, and otherwise

11          protecting the interests of the Class, pursuant to 47 U.S.C. §

12          227(b)(3)(A);

13   (f)    Pre-judgment and post-judgment interest on monetary relief;

14   (g)    An award of reasonable attorneys' fees and court costs; and

15   (h)    All other and further relief as the Court deems necessary, just,

16          and proper.

18   Dated:  June 27, 2018                    Respectfully submitted,

19                                    By:  */s/ John P. Kristensen*

21                                    John P. Kristensen (SBN 224132)
                                      David L. Weisberg (SBN 211675)
22                                    Christina M. Le (SBN 237697)
                                      **KRISTENSEN WEISBERG, LLP**
23                                    12540 Beatrice Street, Suite 200
                                      Los Angeles, California 90066
24                                    Telephone:  (310) 507-7924
                                      Fax:  (310) 507-7906
25                                    *john@kristensenlaw.com*
                                      *david@kristensenlaw.com*
26                                    *christina@kristensenlaw.com*
27                                    **Attorneys for Plaintiffs**

28

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury for all such triable claims.

Dated:  June 27, 2018                    Respectfully submitted,

                              By:   */s/ John P. Kristensen*
                                    _____

                                    John P. Kristensen (SBN 224132)
                                    David L. Weisberg (SBN 211675)
                                    Christina M. Le (SBN 237697)
                                    **KRISTENSEN WEISBERG, LLP**
                                    12540 Beatrice Street, Suite 200
                                    Los Angeles, California 90066
                                    Telephone:  (310) 507-7924
                                    Fax:  (310) 507-7906
                                    *john@kristensenlaw.com*
                                    *david@kristensenlaw.com*
                                    *christina@kristensenlaw.com*
                                    **Attorneys for Plaintiffs**